UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MECHANICS LAUNDRY & SUPPLY,<br>INC. of INDIANA SHAREHOLDERS<br>LIQUIDATING TRUST, et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:04-cv-1122-DFH-TAB |
| | ) | |
| AMERICAN CASUALTY COMPANY | ) | |
| OF READING, PA., et al., | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Mechanics Laundry & Supply, Inc. of Indiana Shareholders
Liquidating Trust, Filco Ltd., Progress Holdings, LLC, and Filco Corporation
(collectively, "Filco") have filed this action against their insurers American
Casualty Company, Continental Casualty Company, Transcontinental Insurance
Company, Transportation Insurance Company, and Valley Forge Insurance
Company (collectively, "CNA") over CNA's failure to provide insurance coverage for
costs associated with environmental contamination at four Filco sites located in
Indiana and Illinois.

Filco owned and operated uniform rental and cleaning facilities in Lafayette,
South Bend, and Indianapolis, Indiana, as well as one facility in Niles, Illinois.
Beginning in 1998, Filco became aware of the potential presence of

perchloroethylene and other contaminants in the soil and groundwater at these sites. Eventually, Filco filed claims with CNA for coverage of the expensive clean-up efforts and other costs related to these sites. CNA initially denied coverage for the Niles site and refused to take a position on coverage for the remaining sites.

In July 2004, Filco filed this action asserting breach of contract and breach of an insurer's duty of good faith and fair dealing, and seeking a declaratory judgment against CNA under this court's diversity jurisdiction.[1] Each plaintiff's total claim easily exceeds the $75,000 threshold of 28 U.S.C. § 1332(a).

The parties have settled portions of plaintiffs' claims. The remaining issues are: (1) whether CNA is obligated to reimburse Filco for defense costs incurred

---

[1]Diversity of citizenship is complex but complete. John W. Boyd, a citizen of Indiana, testified he is the trustee for Mechanics Laundry & Supply, Inc. of Indiana Shareholders Liquidating Trust. See *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 465 (1980) (trust takes on the citizenship of its trustee for diversity purposes); see also Boyd Dep. at 5 (stating Boyd is the trustee for Mechanics Laundry & Supply, Inc. of Indiana Shareholders Liquidating Trust]. Filco Ltd. is a limited liability company organized in Indiana. Its members are Darroll P. French, a citizen of Florida, and the French Delta Trust, whose trustee is John W. Boyd, a citizen of Indiana. See *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) (a limited liability company takes on the citizenship of all its members for purposes of federal diversity jurisdiction). Progress Holdings, LLC is a limited liability company organized in Indiana. Progress Holdings' members are also Darroll P. French and the French Delta Trust. Filco Corp. is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

American Casualty Company is a Pennsylvania corporation. Continental Casualty Company is an Illinois corporation. Transcontinental Insurance Company is a New York corporation. Transportation Insurance Company is an Illinois corporation. Valley Forge Insurance Company is a Pennsylvania corporation. All defendant corporations have their principal places of business in Illinois.

before Filco provided CNA with notice of its contamination claims (so-called "pre-tender" costs and expenses); (2) the billable rate CNA will pay in the future for defense costs incurred by Filco's counsel; and (3) whether additional policies are available at certain Indiana sites.

In this entry, the court considers the first remaining issue. CNA has asserted by way of affirmative defense that plaintiffs are barred from claiming pre-tender costs and expenses. Filco has moved for partial summary judgment seeking to strike this affirmative defense as an incorrect statement of law. Docket No. 72. CNA has also moved for partial summary judgment, claiming that the policies bar Filco from recovering pre-tender costs and expenses. Docket No. 74. As explained below, both motions are denied. In addition, CNA's motion to strike Filco's surreply to CNA's motion for partial summary judgment, Docket No. 90, is also denied. The surreply was Filco's opportunity to address CNA's "fall-back" allternative arguments and evidence on the decisive issues of whether Filco's delays in giving notice to CNA were reasonable and whether Filco rebutted the presumption that the delays caused prejudice to CNA.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no genuine issues of material fact, leaving

the moving party entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).
The moving parties must show there is no genuine issue of material fact.  *Celotex
Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A factual issue is material only if
resolving the factual issue might change the suit's outcome under the governing
law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue
is genuine if there is sufficient evidence for a reasonable jury to return a verdict
in favor of the non-moving parties on the evidence presented.  *Id.*

In deciding a motion for summary judgment, the court may not make
credibility determinations, weigh the evidence, or choose from among different
reasonable inferences that might be drawn from the evidence.  *Paz v. Wauconda
Healthcare and Rehabilitation Centre, LLC*, 464 F.3d 659, 664 (7th Cir. 2006)
(reversing summary judgment); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)
(reversing summary judgment).  The court must view the evidence in the light
reasonably most favorable to the non-moving parties, giving them the benefit of
conflicts in the evidence and the most favorable reasonable inferences.  *Paz*,
464 F.3d at 664; *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 754 (7th Cir. 2006).

"Where there are no genuine issues of material fact, contract interpretation
is particularly well-suited for summary judgment."  *Allstate Ins. Co. v. Tozer*,
392 F.3d 950, 952 (7th Cir. 2004) (reversing and remanding with instructions to
enter summary judgment in favor of plaintiff on issue of Indiana contract law).
Where a contract is ambiguous as applied to the circumstances shown by the

evidence, however, summary judgment may be difficult to support.  In such a case, the parties may try to clarify the ambiguity by presenting extrinsic evidence of the objective manifestations of their intentions.  See *University of Southern Indiana Foundation v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006) (abandoning distinction between patent and latent ambiguities).

*Facts for Summary Judgment*

Filco entities owned and operated four uniform rental and cleaning facilities in Indiana and Illinois.  Filco entities operated a site in Lafayette, Indiana from 1989 through 1998; Indianapolis, Indiana from the early 1940s through 2003; South Bend, Indiana from the late 1980s through 1998; and Niles, Illinois from the mid-1980s through the filing of this suit.

Starting in the late 1980s, CNA sold Filco a series of comprehensive general liability insurance policies for these sites.  These policies came into play beginning in the late 1990s, when Filco learned of potential contamination problems at these sites.

I.     *Lafayette Site*

In May 1998, Mechanics Laundry merged into the CINTAS Corporation and conveyed the Lafayette site to CINTAS.  Boyd Dep. 52.  While performing due diligence for this transfer, CINTAS engaged Environ, an environmental consultant,

to study soil and water samples at the Lafayette site.  In April 1998, Filco's own environmental consultant, The Wetlands Company, LLC, analyzed Environ's results.  The Wetlands report stated:

> Soil samples collected in the vicinity of the former stoddard USTs were identified as containing gasoline and diesel range petroleum hydrocarbons and chlorinated hydrocarbons (trichloroethene and perchloroethene).  All water samples were identified as containing chlorinated hydrocarbons and petroleum hydrocarbons.  The water samples collected in the vicinity of the former stoddard USTs contained the highest levels of these constituents.

Jessee Aff. Ex. 1.  Wetlands suggested installing monitoring wells within the boundaries of the Lafayette site.  Jessee Aff. ¶ 5.  Filco claims that it had no knowledge at the time whether impermissible levels of contaminants had migrated beyond the Lafayette site.  *Id.*, ¶ 6.  Filco did, however, begin to discuss remediation of the Lafayette site with the Indiana Department of Environmental Management ("IDEM") in August 1998.  Boyd Dep. Ex. 9.

In May 2001, Filco retained counsel to assist with environmental issues relating to the Lafayette site.  In April 2002, IDEM informed plaintiffs' environmental consultant that contaminants had been discovered in the City of Lafayette well field located 2500 feet from the site.  Jessee Aff. ¶ 12.  Wetlands then performed additional testing and discovered contaminants outside of the Filco site in August 2002.  On October 30, 2002, testing confirmed that contaminants had in fact migrated to groundwater beyond the site.  *Id.*, ¶ 11. On October 31, 2002, Filco tendered CNA notice for costs arising out of the contamination of the Lafayette site.  Lee Aff. Ex. 1.  Before Filco tendered notice,

it incurred $194,700.52 in legal fees and expenses relating to the remediation of the Lafayette site.

II.     *South Bend Site*

As part of the May 1998 merger, Filco conveyed the South Bend site to CINTAS.  Boyd Dep. at 33.  Similar to the process of the Lafayette site, CINTAS hired Environ to study soil and groundwater samples.  Jessee Aff. ¶ 15.  Filco's own consultant evaluated these results and found indications of contaminants within the boundaries of the South Bend site above permissible levels.  Jessee Aff. Ex. 4.   Again, Filco claims it had no knowledge at the time whether the contaminants had migrated beyond site boundaries.   Jessee Aff. ¶ 17.   In February 1999, Filco agreed to enter the South Bend site in IDEM's Voluntary Remediation Program.  Def. Br. Ex. 6 (Voluntary Remediation Agreement between Mechanics Laundry and IDEM).

In May 2001, Filco retained counsel to assist with environmental issues relating to the South Bend site.  Boyd Dep. 36.  In August and December 2003, Filco's environmental consultant tested samples outside the site boundaries. These tests confirmed that contaminants had in fact migrated from the site and into the groundwater beyond property boundaries.   In January 2004, Filco tendered CNA notice of potential liability regarding the South Bend site.  Before tendering notice, Filco incurred $125.237.06 in legal fees and expenses relating to the remediation of the South Bend site.

III.   *Indianapolis Site*

Mechanics Laundry sold the Indianapolis site to Filco in May 1998.  Boyd Dep. 16.  In February 2003, Filco agreed to convey the site to Alsco, Inc.  *Id.* at 15. In advance of the Alsco transfer, Filco had its environmental consultant conduct tests on the site in January and February 2003.  It is undisputed that these tests revealed contaminants at levels 1,420 times above allowable levels in the soil and 1,640 times above allowable levels in the groundwater.  In February 2003, Filco retained counsel to assist with environmental issues relating to the Indianapolis site.

In July 2003, Filco applied to enter the Indianapolis site in the IDEM Voluntary Remediation Program.  Boyd Dep. 18.  In October 2003, Filco tendered CNA notice of potential liability regarding the Indianapolis site.  Before tendering notice, Filco incurred $48,015.17 in legal fees and expenses relating to the remediation of the Indianapolis site.  In March 2004, Filco entered an agreement with IDEM to remediate the site.

IV.   *Niles Site*

Wetlands performed Phase I and Phase II assessments of the Niles, Illinois site in February 2000 and October 2001.  These tests indicated the potential presence of contaminants in the soil and groundwater of the site.  Jessee Aff. Ex.

-8-

10.  In December 2001, plaintiffs retained counsel to assist with environmental issues relating to the Niles site.  Boyd Dep. 78.

In August 2003, Filco tendered CNA notice of potential liability regarding the Niles site.  Before tendering notice, Filco incurred $52,745.50 in legal fees and expenses relating to the remediation of the Niles site.  After giving CNA notice, Filco entered the Niles property in the Illinois Environmental Protection Agency's Site Remediation Program in January 2004.[2]  Additional facts are noted as needed below, keeping in mind the standard for summary judgment, particularly on the issue of prejudice to CNA.

*Discussion*

The parties dispute whether CNA is obligated to pay pre-tender costs and expenses incurred by Filco.  Before tendering the needed notices to CNA, Filco incurred over $420,000 in legal fees and expenses relating to the remediation of the four sites, primarily for environmental consultants.  CNA contends that a voluntary payment provision in its insurance policies absolves the insurance companies of responsibility for these pre-tender costs.  The relevant provision states that as a condition for commercial general liability coverage:

---

[2]The amounts of pre-tender costs and expenses for the Indianapolis and Niles sites were below the $75,000 jurisdictional threshold viewed in isolation. The relevant plaintiffs had additional claims for both compensatory and punitive damages that put the amount in controversy for the relevant plaintiffs above the threshold.

> No insureds will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our [CNA's] consent.

Lee Aff. Ex. 11.[3]  The policies also require the following condition for coverage:

> a.   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.
>
> . . . .
>
> b.   If a claim is made or "suit" is brought against any insured, you must: (1) Immediately record the specifics of the claim or "suit" and the date received; and (2) Notify us as soon as practicable.

*Id.*  Filco acknowledges spending significant sums before notifying CNA about its claims.  Filco correctly points out, however, that there is more to this issue than simply interpreting and applying the terms of the quoted provisions.  Under Indiana law, courts apply a two-part analysis to determine how to give force to such voluntary payment provisions in insurance contracts.

In *Liberty Mutual Insurance Co. v. OSI Industries, Inc.*, 831 N.E.2d 192 (Ind. App. 2005), policy holders OSI and Beltec filed suit against insurer Liberty Mutual over its failure to defend an earlier trade secret lawsuit.  The trial court granted summary judgment for plaintiffs and ordered Liberty Mutual to pay OSI and Beltec's costs of defending the original lawsuit as well as its attorney's fees in prosecuting the declaratory judgment action against Liberty Mutual.  *Id.* at 197.

---

[3]The parties do not dispute that this language is the same or substantially similar to that used in all the policies at issue in this case.

-10-

On appeal, Liberty Mutual argued in part that the trial court erred in awarding OSI and Beltec any defense costs that were incurred before they notified the insurer about the trade secret lawsuit. *Id.* at 200. Language in Liberty Mutual's insurance policy was identical to that employed by CNA and Filco: "No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Liberty Mutual's] consent." *Id.* Liberty Mutual's policy (like CNA's) also required policy holders to: "(1) Immediately record the specifics of the claim or 'suit' and the date received; and (2) Notify us as soon as practicable." *Id.* OSI and Beltec were sued some fourteen to eighteen months before they informed Liberty Mutual of the action, all the while incurring expenses without the insurer's knowledge. To decide whether Liberty Mutual was liable for these expenses, the Indiana court applied a two-part test:

> In the first part of the analysis, as this Court has heretofore explained, we inquire whether the notice was tendered within a reasonable time. Second, we inquire whether the insurer suffered prejudice. If the notice of the filing of the lawsuit was not tendered within a reasonable time, there is a presumption of prejudice to the insured. However, this presumption "may be rebutted by evidence that prejudice did not actually occur."

*Id.* at 202 (internal citations omitted). In light of CNA's arguments that this two-step analysis should not apply to a defense based on the voluntary payment provision, as distinct from the notice provision, it is worth emphasizing that the *Liberty Mutual* court applied this analysis in a case where the insurer was relying on both a notice and a voluntary payment clause. See *id.* at 200 (quoting both clauses).

The Indiana Court of Appeals determined first that OSI's and Beltec's fourteen to eighteen month delays in notifying Liberty Mutual were unreasonable as a matter of law. *Id.* at 203. The court then concluded as a matter of law that Liberty Mutual was prejudiced by the delays because it: "(1) was denied the opportunity to offer settlement or guide the course of litigation; (2) was not given the opportunity to select an attorney more familiar with insurance defense to defend the suit; and (3) was unable to negotiate the amount of attorney's fees." *Id.* at 204, citing *Milwaukee Guardian Ins., Inc. v. Reichart*, 479 N.E.2d 1340, 1343 (Ind. App. 1985). The appellate court therefore reversed the trial court's award of pre-notice fees and costs to OSI and Beltec.

CNA has cited two unpublished Indiana trial court opinions to argue that the two-part test applied in *Liberty Mutual* is inapplicable to this case, where defendant is using the voluntary payment clause not to deny *all* coverage, but to deny only coverage of the insureds' pre-tender costs. See *Dreaded ,Inc. v. St. Paul Guardian Insurance Co.*, Cause No. 49D10-0503-PL-011747 at 5-6 (Marion Super. Ct. 2006); *Dana Corp. v. Hartford Accident & Indem. Co.*, Cause No. 49DO1-9301-CP-0026 at 130 (Marion Super. Ct. 1997) (finding that a showing of prejudice was not required when an insurer relies on a voluntary payment clause to deny only pre-tender costs, and not to deny coverage entirely). The *Dana Corporation* court did not have the benefit of the *Liberty Mutual* opinion when making its decision. The comments in *Dreaded, Inc.* on this point were only an alternative ground for the court's ruling. The comments are consistent with decisions in other states,

but in light of *Liberty Mutual*, the comments are not a persuasive guide to Indiana law on this point.  The *Dreaded, Inc.* opinion relied on *Dana Corporation*.  In the meantime, however, the Indiana Court of Appeals in *Liberty Mutual* had applied the two-step analysis requiring prejudice to an argument that a voluntary payment provision barred liability for only pre-tender costs.  See *Liberty Mutual*, 831 N.E.2d at 200.  That two-part test remains applicable here.[4]

I.    *Reasonableness of Notice*

The court considers first whether Filco's notices to CNA were reasonable. "When the facts regarding the notice are undisputed, the issue of reasonableness is a question of law for the court."  *Liberty Mutual*, 831 N.E.2d at 203, citing *Koenig v. Bedell*, 601 N.E.2d 453, 455 (Ind. App. 1992).  Filco's claims involve four different sites:  Indianapolis, South Bend, Lafayette, and Niles.  Filco's delays in notifying CNA about the potential presence of elevated contaminant levels at these sites ranged from eight months to at least four years.[5]  Indiana courts have

---

[4]CNA argues in a footnote that Illinois law governs issues arising from the Niles site.  CNA makes no mention of how Illinois law might apply differently.  The court considers this point waived. See, *e.g.*, *Moriarty ex rel. Local Union No. 727 v. Svec*, 429 F.3d 710, 722 (7th Cir. 2005) (finding an argument raised only in a footnote waived on appeal).

[5]In considering CNA's motion for summary judgment, the court reads the undisputed evidence in the light most favorable to Filco.  Regarding the Indianapolis site, Filco acknowledged having at least some indication of contamination by February 2003.  Boyd Dep. at 15-16.  It did not notify CNA until eight months later, in October 2003.

Regarding the South Bend site, Filco acknowledges having data that indicated potential contamination as early as October 1999.  Boyd Dep. at 32.  It
(continued...)

previously held such delays to be unreasonable as a matter of law. See *Miller v. Dilts*, 463 N.E.2d 257, 266 (Ind. 1984) (delays of one month, six months, and seven months in reporting auto accidents to insurers held unreasonable); *Liberty Mutual*, 831 N.E.2d at 203 (fourteen month delay in notifying insurer about trade secret litigation was unreasonable); *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 507 (Ind. App. 1993) (delay of thirteen months after the filing of lawsuit and twenty-two months after suffering injury was unreasonable); *Reichart*, 479 N.E.2d at 1343 (Ind. App. 1985) (eleven month delay after filing of lawsuit resulted in presumption of prejudice).

Filco relies on *PSI Energy, Inc. v. The Homes Insurance Co.*, 801 N.E.2d 705, 717 (Ind. App. 2004), to argue that its substantial delays in notifying CNA were reasonable, or at least that there is a genuine issue of fact. The plaintiff in *PSI Energy* filed suit against its excess liability insurers to force these insurers to cover the costs of remediating groundwater contamination at a number of gas manufacturing plants. The insurers moved for summary judgment because plaintiff had failed to provide timely notice of the contamination claims at one of

---

[5](...continued)
did not notify CNA until over four years later, in January 2004. *Id.* at 45.

Regarding the Lafayette site, Filco acknowledges learning of the potential presence of elevated levels of contaminants prior to August 27, 1998. Boyd Dep. at 55. It did not notify CNA until over three years later, in October 2002. *Id.* at 63-64.

Finally regarding the Niles site, Filco acknowledges having indication of contamination at some point in 2001. *Id.* at 71. Filco notified CNA in August 2003.

these sites.[6]  The Indiana Court of Appeals affirmed the trial court's decision to deny summary judgment for the insurers, despite the fact that it took PSI Energy over four years to notify some liability carriers after it was first sued for the contamination at the site.

While the *PSI Energy* court found genuine issues of material fact as to whether the plaintiff's notice was reasonable, the court did not adopt a general rule that longer delays are reasonable in pollution cases.  The decision hinged on the plaintiff's "unique circumstances," see *id.* at 717, circumstances that do not exist here.  By the time PSI Energy was sued for contaminating the site in question, over four decades had passed since it had sold the site.  During those four decades, PSI Energy had purchased numerous different insurance policies from different carriers, presumably covering different time periods.  As the court noted, PSI had to engage in substantial investigation to determine when the contamination occurred, and therefore to determine which of its numerous insurers might owe coverage.  *Id.*  Given the significant time that had passed since PSI Energy had sold the site in question, PSI Energy also initially had some doubt about the extent to which it was responsible for the contamination at all.  *Id.*

_____

[6]After the purchaser of the site was sued for contaminating or threatening to contaminate underground water wells, that purchaser filed a third-party complaint alleging PSI Energy was responsible for the contamination. *PSI Energy*, 801 N.E.2d at 716.  PSI Energy spent over four years investigating the groundwater contamination before providing notice to some of its liability carriers. *Id.*

Those difficulties raised at least an issue of fact as to whether the delays in notice were reasonable under all the circumstances.

Filco cannot claim that comparable circumstances excused its delays.  Like PSI Energy, Filco might have gone some time before becoming aware of the full extent of contamination.  However Filco does not claim to have had any doubt about whether it was responsible for the contamination.  Nor does it claim to have been uncertain about whether some other insurer might have owed coverage for the contamination.  None of these circumstances are sufficient to create a material issue of fact as to whether Filco's extensive delays were reasonable.  Based on the undisputed facts, CNA is entitled to a presumption that it was prejudiced by these delays.

II.   *Prejudice*

Because Filco's delays in notifying its insurers were unreasonable as a matter of law, Filco bears the burden of rebutting the presumption of prejudice. To avoid summary judgment, Filco must "produce evidence that prejudice did not actually occur in the particular situation."  *Liberty Mutual*, 831 N.E.2d at 203, citing *Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co.*, 721 N.E.2d 270, 279 (Ind. App. 1999).

CNA argues here that it was denied opportunities:  (1) to influence the course of negotiations with the Indiana Department of Environmental

Management and the Illinois Environmental Protection Agency regarding the proposed remediation of the sites; (2) to participate in selecting the environmental consultants who studied the full extent of the contamination; and (3) to participate in selecting the attorneys.  See *Liberty Mutual*, 831 N.E.2d at 204 (relying on similar factors as examples of prejudice, and finding prejudice as a matter of law), citing *Reichhart*, 479 N.E.2d at 1343.  As CNA's claims consultant Margaret Rider testified, it was CNA's general practice to try to negotiate favorable rates with an insured's counsel.  Rider Dep. 62.

To rebut the presumption of prejudice, Filco also relies on Rider's deposition testimony.  Rider testified that in environmental contamination cases like these, she expects the insured to take the initial step of hiring an environmental consultant to begin addressing the problem.  Rider Dep. 31.  She also testified that it is rare for her to select attorneys who will defend the insured.  *Id.* at 35.  In these respects, dealing with environmental claims is quite different from, for example, responding to an automobile accident where the insured is unlikely to have selected her own attorney, let alone an expert witness.  In addition, during Rider's deposition, she was asked a series of questions that gave her many opportunities to identify any specific ways in which CNA might have suffered prejudice from the delays in notice.  She repeatedly said she did not recall any. See, *e.g.*, Rider Dep. 168-81.  She may have had excellent reasons for being

unable to recall any,[7] but CNA has not buttressed its position with more specific evidence obtained or recalled outside of her deposition.

In addition, Rider's testimony in general, and the facts of this case in particular, show that an insured in Filco's position may need to take action to protect its own interests for many months before the insurer makes a decision on coverage. The insured cannot refuse to meet with or work with government environmental protection agencies merely because the insurer has been unable to decide on coverage for several months. See *Governmental Interinsurance Exchange v. City of Angola*, 8 F. Supp. 2d 1120, 1135 (N.D. Ind. 1998) (granting summary judgment for insured where insurer was not prejudiced by insured's cooperation with government agencies, and explaining that voluntary payment provision should not bar coverage where insured cooperates with government agencies before insurer makes coverage decision). Important decisions made and actions taken during that interim period cannot always be delayed until the insurer makes its decision on coverage. Thus, it is not unusual for the insured to proceed with attorneys and consultants of its own choosing even where notice is timely.

In addition to Rider's deposition, Filco relies on evidence that in the years since it provided notice of the claims, CNA has not criticized or tried to change

---

[7]Rider testified that over the past four years, she had handled an average of over 80 cases per year. Rider Dep. 42.

Filco's approach to the defense and remediation of these claims. CNA has not criticized the work of Filco's attorneys or its environmental consultants. Also, it is worth noting that before the tenders to CNA, Filco was not spending other people's money. Even after Filco gave notice, CNA was not admitting coverage even for defense costs going forward, and it took many months to decide about those issues. (It took CNA's claims consultants more than six months just to receive the copies of the relevant policies from the company archives.) Until quite recently, Filco has not had reliable assurances of coverage even for defense costs. Thus, Filco had a strong incentive to spend wisely on these problems. The record would easily allow a reasonable jury to find that Filco employed competent and experienced attorneys and environmental experts to deal with the problems.

CNA has identified ways in which it perhaps might have been prejudiced, but it is not at all clear that it was. CNA's arguments about possible prejudice would seem to have the practical effect, if adopted by the court, of making it impossible for an insured to rebut the presumption of prejudice. It is surely difficult to prove the negative, the absence of prejudice, but the Indiana courts have clearly chosen to make the presumption rebuttable. See *Liberty Mutual*, 831 N.E.2d at 203. There must be some way an insured can meet that burden, and Filco has done as much as one might imagine. Filco has looked under as many rocks as possible for evidence of prejudice and has found none. Filco has given CNA ample opportunities to come forward with evidence that would show prejudice. Filco has also come forward with evidence that it is quite common for

CNA to allow the insured in an environmental contamination case to be as pro-active as Filco was in the early stages of these disputes.   CNA has come forward with arguments but not a great deal of evidence on the issue, though the court recognizes the inherently speculative nature of the question and the difficulty of finding evidence of actual prejudice.   Yet Indiana courts have established this test and have left the door open for rebuttal of the presumption.   "If the insured can present 'some evidence' that prejudice did not occur, 'the question becomes one for the trier of fact to determine whether any prejudice actually existed.'" *PSI Energy, Inc. v. The Home Insurance Co.*, 801 N.E.2d 705, 715 n.7 (Ind. App. 2004), quoting *Sutton v. Littlepage*, 669 N.E.2d 1019, 1023 (Ind. App. 1996).   The court concludes that Filco has come forward with sufficient evidence to avoid summary judgment on the issue of prejudice.   The issue will be subject to further development at trial.

*Conclusion*

For the foregoing reasons, the court denies CNA's motion for summary judgment on the issue of liability for pre-tender costs and expenses incurred by Filco  (Docket No. 74), denies Filco's motion to strike or for summary judgment (Docket No. 72) as to CNA's thirteenth affirmative defense (Docket No. 72), and denies CNA's motion to strike plaintiffs' surreply (Docket No. 90).

So ordered.

Date: March 30, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Charles P. Edwards
BARNES & THORNBURG LLP
charles.edwards@btlaw.com

John Paul Fischer Jr.
BARNES & THORNBURG LLP
john.fischer@btlaw.com

David Michael Heger
BARNES & THORNBURG LLP
david.heger@btlaw.com

John Milton Kyle III
BARNES & THORNBURG LLP
john.kyle@btlaw.com

John Anthony Lee
MICHAELS & MAY P.C.
jlee@michaelsmay.com

Jan Michael Michaels
MICHAELS & MAY P.C.
jmichaels@michaelsmay.com

Mary K. Reeder
RILEY BENNETT & EGLOFF LLP
mreeder@rbelaw.com

Scott Michael Salerno
MICHAELS & MAY P.C.
ssalerno@michaelsmay.com